**OAKLAND PARK INN, Appellant,**

v.

**DIRECTOR OF REVENUE OF
the STATE OF MISSOURI,
Respondent.**

**No. 73649.**

Supreme Court of Missouri,
En Banc.

Jan. 28, 1992.

Dennis T. McCubbin, Clayton, for appellant.

William L. Webster, Atty. Gen., Carole Iles, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN R. O'MALLEY, Special Judge.

Appellant, Oakland Park Inn (Oakland), appeals an adverse ruling of the Administrative Hearing Commission, upholding the assessment by the Director of Revenue of $6,564.02 in uncollected sales tax on amounts paid as gratuities under the banquet contracts between appellant and its customers. We affirm the assessment of the tax.

■ This Court has exclusive appellate jurisdiction in the construction of Missouri revenue laws. Mo. Const. art. V, § 3. The Court reviews decisions of the Administrative Hearing Commission that interpret revenue law *de novo*. *Jackson Excavating Co. v. Administrative Hearing Commission*, 646 S.W.2d 48, 49 (Mo.1983). This Could should affirm the decision of the Commission if it is "supported by the law and competent and substantial evidence on the whole record, and ... not clearly contrary to the reasonable expectations of the General Assembly." *GTE Automatic Electric v. Director of Revenue*, 780 S.W.2d 49, 50 (Mo. banc 1989), and Section 621.193, RSMo 1986.

Oakland is a hotel with restaurant facilities including banquet rooms. All customers of Oakland must sign a "Banquet Contract" which provides for the customer to pay a 16 percent gratuity plus 5.725 percent Missouri state tax on a total price of the banquet. The customer receives an invoice that states the total charges for food and drink separately from the gratuity.

The banquets are served by waiters and waitresses employed by Oakland. The servers are paid an hourly wage plus their share of the gratuity, less income and FICA taxes. Base pay of the waiters/waitresses is "lower than average," and their share of the gratuity is to increase their wages to the average rate. When banquet provisions are delivered to locations away

from Oakland Park Inn, the waiters usually just deliver the food in containers, and provide no actual service during the meal. Oakland charges the same gratuity for the banquet off the premises as on the premises. In the event of cancellation of a banquet, the customer pays one-third of the food costs but not the gratuity. Oakland did not collect or remit sales tax on the amounts charged and itemized separately as gratuities.

■ The issue to be decided is whether or not the "gratuity" is part of the sale of the food and drink and, therefore, taxable. The appellant refers to the 16 percent charge as a "voluntary gratuity," but if anything, it must be styled as the oxymoronic term "involuntary gratuity."

■ The applicable statute defines "gross receipts" as the "total amount of the sale price of the sales at retail, including any service that is a part of the sale." Section 144.010(3), RSMo 1986. The mere fact that a charge is stated separately is not conclusive as to whether or not it is a part of the sale and taxable. The fact that the separate charge (tip) will eventually be paid to servers does not distinguish it from the fixed costs to prepare the food contained in the price of the meals. Both are equally taxable under the contract created by appellant. To find otherwise would distort and nullify the logic and the language of the statute and frustrate the intent of the legislature.

Case law from other jurisdictions, while not uniform, does provide a pathway. These courts have bifurcated the issue into two inquiries: (1) Is the gratuity really "mandatory?"; and (2) Is the amount collected and paid to the servers necessary to bring their wages up to the minimum federal wage or the local market rate?

In *Cohen v. Playboy Clubs International, Inc.*, 19 Ill.App.3d 215, 311 N.E.2d 336 (1974), the taxpayer argued that the food and drink served by the Playboy bunnies was actually part of the club's "entertainment," and, therefore, the mandatory 15 percent service charge was not taxable.

The Illinois court held that the charge, which was itemized separately on the bill, was occasioned by the services rendered to the club patrons in the sale of food and drink and not by any participation of the bunnies as entertainers in the sale.[1]

Cases involving country clubs revolve around factual findings concerning the voluntary nature of the gratuity or tip. In cases where the tip could be refused by a clubmember, it was held not taxable. *See Big Foot Country Club v. Wisconsin Department of Revenue*, 70 Wis.2d 871, 235 N.W.2d 696 (1975); and *Lakeview Inn and Country Club, Inc. v. Rose*, 175 W.Va. 689, 338 S.E.2d 166, 169–170 (1985).

An instructive discussion may be found in the decision in *Baltimore Country Club v. Comptroller of the Treasury*, 272 Md. 65, 321 A.2d 308 (1974), where the court found there is a constitutionally reasonable distinction to be drawn in sales tax issues between voluntary and mandatory service charges or gratuities. In that case the court concluded that with voluntary tips there is no *contractual* obligation between a purchaser and vendor resulting from a taxable retail sale. In the case before this Court, Oakland insisted and required each customer to reduce an order to contractual form, as prepared by Oakland, which required a specific percentage be assessed by Oakland. To complete the contract with appellant, the customer was obligated to pay. Thus, it follows the 16 percent "gratuity" was mandatory and, since it raised the cost of the meal, conclusively involuntary.

As to the second prong of the inquiries, it is conceded and indeed asserted by Oakland that the gratuity is necessary to equalize the employees' wages, and in fact this is the purpose of the charge.

Two recent decisions by this Court, *Kurtz Concrete, Inc. v. Spradling*, 560 S.W.2d 858 (Mo. banc 1978), and *May Department Stores Company v. Director of Revenue*, 791 S.W.2d 388 (Mo. banc 1990), address the issue of whether a charge for a particular service was a part of the sale of

---

**1.** The nature of the participation is purely speculative.

other merchandise, but neither case involves the peculiar and perhaps unique nature of the sale of food and tax for serving meals. It is not customary or usual in our society to tip truck drivers who deliver concrete to job sites, while it is commonplace to tip waiters and waitresses who deliver food to our table.

The decision of the Administrative Hearing Commission is affirmed.

ROBERTSON, C.J., RENDLEN, COVINGTON, HOLSTEIN and BLACKMAR, JJ., and CRANE, Special Judge, concur.

BENTON, J., not sitting.

THOMAS, J., not participating because not a member of the Court when case was submitted.